UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12 CR 18 CDP / DDN |
| ) | |
| LAWRENTEZ RHONE, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND RECOMMENDATION

The pretrial motions of the parties were referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b).

Pending are the motions of defendant Lawrentez Rhone to suppress evidence (Docs. 31, 38), and the motion of the United States for the pretrial determination of the admissibility of evidence. (Doc. 16.) An evidentiary hearing was held on September 7, 2012. From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

### FACTS

1. During the evening hours of December 11, 2011,[1] St. Louis Metropolitan Police Officer Lindsay Anderson and her partner, Officer Brandon Wyms, were on patrol in a marked patrol car in the Jeff Vanderlou area in St. Louis. Officer Wyms drove the patrol car with Officer Anderson riding in the front passenger seat. The Jeff Vanderlou area was then known to the officers for its high violent crime rate and drug trafficking.[2]

---

[1] In his post-hearing pro se memorandum, defendant Rhone states that the officers were motivated against him by the following: On December 3, 2011 he had a confrontation with Officers Anderson and Wyms at a bar; on December 5, 2011, he had another confrontation with 9th District police officers; and on December 8, 2011, 9th District officers followed him in a vehicle until he exited his vehicle on Gamble St. Defendant also states that on March 15, 2012, in the 22nd Judicial Circuit Court, in spite of Officer Anderson's testimony, the case against defendant was dismissed because of an unlawful stop. Even considering that these earlier contacts with the police occurred, which the undersigned does not find, the undersigned credits the testimony of Officer Anderson about the events she described in her testimony.

[2] In his post-hearing pro se memorandum, defendant Rhone argues that most of the City of St. Louis has this reputation and that this consideration of the reputation of the Jeff Vanderlou area should have been included in the police report of the incident. The undersigned credits the testimony of Officer Anderson that the officers had this reputation of this area of the city in their minds when this incident occurred.

2. Shortly before 8:50 p.m., as the officers drove south on Glasgow Avenue toward the intersection with Gamble Street, they saw a green four-door Dodge Intrepid automobile turn onto Glasgow and continue south. The officers paid attention to this vehicle, because they knew Dodge Intrepids were frequently stolen in the St. Louis area and because of the reputation of Jeff Vanderlou as a high crime area. The officers also saw that the vehicle's license plates were of an obsolete design. They saw that, when the Intrepid turned west onto Dr. Martin Luther King Drive, it failed to stop at the stop sign.[3]

3. The officers followed the Intrepid on Dr. Martin Luther King until it turned north on North Garrison Avenue[4] and again failed to stop at the stop sign at that intersection. While continuing to follow the vehicle, Officer Anderson ran a computer search on the license plate number.

4. Next, the Intrepid turned west onto Thomas Street. At the intersection of Thomas Street and Webster Avenue, the officers saw the Intrepid drive to the left around another vehicle, and continue straight on Thomas Street, failing to stop at the intersection's stop sign. The officers continued to follow the vehicle.

5. Then the officers received the results of the computer search which indicated that there was no valid registration for the vehicle,[5] which the officers knew was another violation of the St. Louis City traffic laws. After receiving this information, at the intersection of Thomas Street, Dr. Martin Luther King Drive, and North Compton Avenue, Officer Wyms activated the overhead lights and sirens of the patrol car. Thereafter, the Intrepid was driven south on North Compton Avenue and quickly stopped briefly, as if the driver intended to pull over and stop the car. Officer Anderson notified the dispatcher. However, the Intrepid was then driven away to the intersection of School Street and North Compton Avenue, where it stopped briefly before turning west onto School Street.

6. The officers' patrol car was equipped with a video camera which automatically activated when the patrol car's emergency lights were turned on. The camera recorded some of the events involving the Intrepid.[6]

---

[3] The officers then knew that failing to stop at a stop sign is a violation of the St. Louis City traffic laws.

[4] See Gov. Ex. EH-1, map of relevant area.

[5] In his post-hearing pro se memorandum, defendant Rhone argues that the government's evidence indicated that the officers determined from the Intrepid's license plate that the Intrepid was not lawfully registered and he argues that such a determination could not be made merely from the plate. The undersigned credits the testimony of Officer Anderson that this determination was made from the radio computer check of the Intrepid.

[6] During the evidentiary hearing the government played a compact disc recording of the recorded portion of this incident, Government Ex. EH-2. In his post-hearing pro se memorandum, defendant argues

7. While traveling west on School Street, the Intrepid stopped again. The officers stopped their vehicle, exited the patrol car, and prepared to approach the Intrepid. However, the passenger in the Intrepid, later identified as Lawrentez Rhone, got out of Intrepid and took off running west along School Street. At that time, Officer Anderson, dressed in a police uniform, yelled to Rhone, "Get down on the ground." Rhone kept running. The officers returned to the patrol car and drove west on School Street following Rhone. From the patrol car following Rhone, Officer Anderson again yelled to Rhone, "Get down on the ground." Rhone continued to run.

8. At the intersection of North Leonard Avenue and School Street, the officers stopped the patrol car and Officer Anderson got out and pursued Rhone on foot. As she did so, she yelled to Rhone, "You better get down or I'm going to shoot your ass." Rhone turned and ran east on School Street, with Anderson in pursuit. Officer Wyms contacted his sergeant and followed Anderson in the patrol car. During the pursuit, Officer Anderson yelled at Rhone, "Police. Stop." During the foot pursuit, Officer Anderson also saw Rhone move his hands around the left side of his jacket. Rhone turned and ran north on Compton Avenue for half a block. Then, he took a couple steps south before tripping and falling of his own accord.[7]

9. Officer Anderson and other officers quickly arrested the fallen Rhone for the unlawful use of a weapon and resisting arrest. A pat-down of the left side of Rhone's jacket revealed the outline of a firearm. The officers attempted to remove the item from Rhone's interior jacket packet, but the zipper stuck. A sergeant on the scene unzipped the pocket and retrieved a loaded 9 mm handgun. The sergeant gave the gun to Officer Wyms.

10. The police transported Rhone to the police station where Officer Wyms read Rhone his constitutional rights to remain silent and to counsel, which Rhone understood. Thereafter, Rhone made no statement to the police.

---

that this audio-video recording was altered and part was erased to support the police version of the incident. This conclusory argument is not supported by the record or any evidentiary presentation by defendant.

[7] In his post-hearing pro se memorandum, defendant argues that after he fell to the ground and was arrested, the police used excessive force against him, albeit without describing the form of the excessive force. This part of the incident is recorded on Government Ex. EH-2. That video recording does not indicate in any fashion that the police used excessive force against him when he tripped and fell and the police officers caught up with him shortly thereafter.

11.     Later on December 11, 2011, the police, including Officer Wyms, apprehended the driver of the Intrepid, who received traffic citations for failure to register the vehicle and driving without insurance. No citation was issued for violating the traffic stop signs.[8]

## DISCUSSION

Defendant moves[9] to suppress the physical evidence seized by the police following the traffic stop and seizure of defendant. Defendant's counsel argues that the officers did not have sufficient justification to stop the Intrepid vehicle and to seize the firearm from defendant's person. The undersigned disagrees.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. Traffic stops are constitutionally permissible seizures if the officer making the stop reasonably suspects the subject of criminal activity. United States v. Harris, 617 F.3d 977, 978 (8th Cir. 2010). "Even a minor traffic violation provides probable cause for a traffic stop." Id. at 979. During traffic stops, passengers of the stopped vehicles may also be seized within the meaning of the Fourth Amendment. Brendlin v. California, 551 U.S. 249, 257 (2007). A seizure may occur by a show of authority or physical force by a police officer. Id. at 254. Normally, passengers are seized from the moment the car stops on the side of the road. Id. at 263. However, when officers attempt to seize someone with a show of authority, there must be actual submission before the seizure occurs. Id. at 254. "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." Arizona v. Johnson, 555 U.S. 323, 333 (2009).

In the instant case, the officers made a show of authority by activating the lights and sirens on the patrol car. However, because defendant did not submit to the officers' authority until during the foot pursuit he fell

---

[8] Defendant Rhone in his pro se post-hearing memorandum argues that the failure of the police to issue a citation for the driver violating the stop signs indicates that the officers did not see the Intrepid do so. The undersigned credits the testimony of Officer Anderson that the officers saw the Intrepid violate the stop signs. Her testimony is corroborated by the video recording of the Intrepid violating the stop sign at the intersection of Webster and Thomas as it was driven west on Thomas before turning south onto North Compton Avenue.

[9] Doc. 31 was filed by defendant Rhone's counsel. Doc. 38 was filed by defendant Rhone pro se. The undersigned has considered the arguments raised in both motions.

and was arrested, no Fourth Amendment seizure occurred until that time. Thus, the efforts of the officers to effect a traffic stop of the Intrepid was not a seizure of defendant, reasonable or otherwise, under the Fourth Amendment.

Even assuming the traffic stop was a seizure, prior to activating the patrol car's lights and sirens, the officers observed the driver commit four traffic violations: failing to stop at three stop signs and operating the vehicle without valid registration. Each of these violations in isolation provide sufficient justification for a constitutionally valid seizure of the Intrepid's driver and passenger Rhone.

Defendant also argues that the officers did not have sufficient justification to conduct a Terry stop and frisk of his person. An investigatory stop is constitutionally permissible if an officer "reasonably suspects that the person apprehended is committing or has committed a criminal offense." Id. at 326. A frisk, or pat-down for weapons, requires additional justification; an "officer must reasonably suspect that the person stopped is armed and dangerous." Id.

When considering reasonable suspicion, the court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). Officers are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id. The reasonable suspicion standard requires a lesser quantum of evidence than probable cause. United States v. Sokolow, 490 U.S. 1, 7 (1989).

The Supreme Court has held that presence in an area with a high rate of crime with unprovoked flight can satisfy the reasonable suspicion standard for a Terry stop. Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Here, prior to the seizure and search of defendant, the officers found him in the Jeff Vanderlou area, an area with a high rate of crime, and defendant fled from the officers with no provocation. Additionally, while in pursuit of defendant, Officer Anderson observed defendant's hands moving around his jacket pocket. See United States v. Cornelius, 391 F.3d 965, 968 (8th Cir. 2004)(placing hands in jacket pocket and failure to remove hands upon direction by an officer sufficiently justifies a frisk); United States v. Davis, 202 F.3d 1060, 1063 (8th Cir. 2000)(placing hands in jacket pocket and moving to officer's backside upon witnessing the frisk of a companion sufficiently justifies a frisk); see also United States v. Roggeman, 279 F.3d 573, 579 (2002)(bulge in the clothing alone can establish a reasonable suspicion).

Further, if an officer performs a valid pat-down and feels an object immediately apparent as something that may be lawfully seized, a warrantless seizure of the object is justified. Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993). Here, upon frisking the defendant, the officers immediately identified the object in the jacket as a gun. Accordingly, the stop and frisk of defendant, and the subsequent seizure of the gun found on defendant's person were constitutional.

In his post-hearing pro se memorandum, defendant argues that Officers Anderson and Wyms had an ulterior motive (without specifying what the motive was, other than to say they wanted to "get us no matter what" (Doc. 38 at 5)) for arresting him. Even assuming the officers had a motive other than enforcing the law, which the undersigned does not find or conclude, such a subjective motive would be irrelevant in the objective determination from the totality of the circumstances of whether the actions of the officers were reasonable under the Fourth Amendment. See Whren v. United States, 517 U.S. 806, 811-12 (1996).

For these reasons,

**IT IS HEREBY RECOMMENDED** that the motions of defendant Lawrentez Rhone to suppress evidence (Docs. 31and 38) be denied.

**IT IS HEREBY ORDERED** that the motion of the United States for a pretrial determination of the admissibility of any arguably suppressible evidence (Doc. 16) is denied as moot.

The parties are advised they have until close of business on October 8, 2012 to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

　　　　　　　　　　　　　　　　　　　　/S/   David D. Noce　　　　　　　
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on September 19, 2012 .